30 C.C.P.A.(Patents)
**In re JENNINGS et al.**

**No. 4680.**

Court of Customs and Patent Appeals.

Feb. 1, 1943.

Barnes, Kisselle, Laughlin & Raisch, of Detroit, Mich. (John M. Kisselle, of Detroit, Mich., of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (Clarence W. Moore, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the Primary Examiner rejecting claims 1, 2, 3, 5, 6, 8, 9, 13, 15, 16, 18, 19 and 23 of appellants' application for a patent.

No claims were allowed by the Primary Examiner, but on appeal he was reversed with respect to claims 10, 11, 12, 20, 21, 22, 24, 25 and 26, and these claims stand allowed. All of the allowed claims are method claims.

Before us appellants have moved to dismiss the appeal as to claims 18 and 23, which motion will be granted.

Of the claims before us for consideration claims 1, 2, 3, 5, 6, 8 and 9 are article claims and claims 13, 15, 16 and 19 are method claims.

Claim 1 is illustrative of the article claims and reads as follows: 1. As a new article of manufacture, a diaphragm comprising a fabric having an exposed surface coated with a relatively tough and hard layer of a cured thermo-setting resinous substance rendering the fabric substantially impermeable, and a relatively soft uncured mass of plastic material of the same composition as the hard layer surrounding the fibers of the fabric whereby to render the diaphragm relatively soft and flexible.

Claim 13 is illustrative of the method claims and reads as follows: 13. The steps in treating fabrics to render the same impervious and flexible, which comprises using resinous substances of such relatively high viscosity that when heated above approximately 150° F. it will thoroughly penetrate the fabric, coating the fabric, and then subjecting the coated fabric to a relatively high temperature to form relatively tough and hard outer coatings and retain the materials between the outer coatings in relatively soft condition.

All of the article claims were rejected as lacking invention over the cited prior art.

The method claims were rejected by the Primary Examiner as lacking invention over the cited prior art and also upon the ground of being vague and indefinite and merely directed to a desired result.

The Board of Appeals affirmed the decision of the Primary Examiner rejecting the article claims upon the cited art, and also expressly affirmed his rejection of the

method claims upon the ground of being vague and indefinite, and did not reverse his rejection of these claims upon the ground of lacking invention over the cited art.

The references cited are:

| | | |
|---|---|---|
| Dickey | 1,352,436 | Sep. 14, 1920 |
| Duncan | 1,410,899 | Mar. 28, 1922 |
| Durant et al | 2,060,665 | Nov. 10, 1936 |
| Bennett | 2,083,423 | June 8, 1937 |
| Okie | 2,169,277 | Aug. 15, 1939 |

Of these references the Dickey patent was relied upon only with respect to a claim not now before us, and the board stated that the Durant patent was not as pertinent as the other references.

Appellants' alleged invention is concisely described in the examiner's statement as follows: This application relates to a pump diaphragm and a method of forming the same. Applicants have discovered that if a cloth layer is heavily impregnated with a thermosetting resin and then cured in such a way as to produce a tough skin surface and a soft plastic center that such a diaphragm will give longer service when used in a pump than those conventionally used. The cloth used may be a balloon cloth, airplane fabric and sail duck. This cloth is treated with a hot, viscous, freely flowing resin. The preferred resin being an alkyd resin, specifically a glyptal resin. Other resins may be used such as phenol-formaldehyde and natural resins. Drying oils may also be used.

In view of the foregoing, the only references which we need to consider are the patents to Duncan, Bennett and Okie.

The patent to Duncan, as stated by the board, "describes a fabric which is coated in layers or portions, the outer layer being formed of hard cured cementing material as regular bakelite varnish and the other layers are impregnated with softer curing material and for this purpose castor oil is used."

With respect to the patent to Bennett, the board in its decision stated:

Bennett describes the coating of *condensible* synthetic resin on a fabric which is heated to complete the final polymerization and the hardening of the resin without detriment to the supporting fabric. While the patentee describes a coating of the material with as much as 8 oz. of the synthetic resin per square yard and hardening at temperatures between 350 and 550° F., yet the patentee does not teach a treatment which provides a hard tough layer of cured resinous substance and a relatively soft uncured mass of plastic material surrounding the fibers of the fabric.

The patent to Okie, after describing in detail the invention claimed, states: From the foregoing it will be seen that the sheeted material of this invention includes the following principal elements, namely: a backing sheet (conveniently of paper) may contain soft oils in such manner as to render the sheet substantially waterproof; a presizing or intermediate sizing front coat of a material which does not tend to penetrate the backing, whether previously waterproofed or not; an external finishing coat applied to the presizing or intermediate sizing coat and controlled thereby against penetration unduly into the backing; and one or more backsizing coats which prevent the entrance of moisture into the back of the sheet; and, lastly, where desired, an external sizing coat applied to the binder or finishing coat in order to enhance the desired lustrous and smooth finish.

That the process described in the allowed claims will produce the article here claimed is admitted.

It is clear that the references do not disclose an article such as is described in the article claims before us, for each of them discloses an article in which the outer hard surface is of a composition different from the soft uncured mass of plastic material surrounding the fibers of the fabric.

The patent to Duncan is the more pertinent of the references, but it describes two coatings, one in which regular bakelite varnish is employed to secure the hard exposed layer, and the other coating consists of a composition of bakelite varnish and fifteen to thirty per cent of castor oil. This composition is described in the patent as "soft curing" material, while the bakelite varnish alone is described as "hard curing" material. The patent states that after the composition of bakelite and castor oil is applied and cured the castor oil may amount to from twenty-five to thirty-five per cent of the cured cementing material.

It will thus be seen that appellants' article is novel in that the exposed hard layer is of the same composition as the inner soft uncured mass of plastic material, and the question is whether this renders the claim patentable over the disclosures of the prior art.

Appellants contend that their article is superior to that of the articles disclosed in the references for the reason that inasmuch as they employ the same composition throughout, the outer surface of their article is inherently joined with the pastic permeating substance and there can never be any cracking or peeling off of one portion of the applied substance from the other.

■ This seems reasonable to us. Therefore it is our opinion that patentability of appellants' article claims is not negatived by the references and such claims should be allowed.

We next come to the consideration of the method claims, numbers 13, 15, 16 and 19.

As we have stated, one of the grounds of rejection of these claims was that they are vague and indefinite as being merely directed to a desired result.

In claims 13 and 16, the only specific temperature mentioned is heating the resinous substances to "above approximately 150° F." in order to properly apply the coating to fabric.

Claim 15 recites a temperature of between 150° F. and 250° F. for the same purpose.

Claim 19 does not recite any specific degrees of temperature.

Each of the methods claims, 13, 15 and 16, consists of three steps:

1. Treating a resinous substance by heating above 150° F. to render it sufficiently viscous to penetrate the fabric.

2. Coating the fabric with the substance so heated.

3. Subjecting the coated fabric to "a relatively high temperature" to secure the result desired.

It is clear that there is nothing novel in the first or second steps above recited, and if the claims describe an invention it lies wholly in the novelty of the third step.

It is not clear what is meant by "a relatively high temperature." As the examiner pointed out, a temperature of 250° F. is a high temperature as compared with the normal atmospheric temperature, but as is shown by the references it is not high as compared with the temperature usually employed in curing resins.

Furthermore, as observed by the examiner, according to appellants' specification the temperature must be related to the duration of its application to secure the desired results. None of the claims under discussion recite any time during which the "relatively high temperature" is employed.

Appellants rely upon the case of Eibel Process Company v. Minnesota & Ontario Paper Company, 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523, in which patent claims reciting "high elevation" and "substantial elevation" were found to be valid.

With respect to that case, we would first observe that, granting that the claims there involved would under the peculiar facts there existing now be found valid by the Supreme Court, it does not follow that the method claims before us are allowable; and, secondly, we cannot be unmindful of the fact that the recent decisions of that court indicate a somewhat stricter interpretation of the patent statutes than prevailed at the time the decision in the Eibel Process Company case was rendered.

■ One of the latest cases upon the subject of indefiniteness of patent claims is that of General Electric Co. v. Wabash Appliance Corp. et al., 304 U.S. 364, 58 S. Ct. 899, 901, 82 L.Ed. 1402, in which the following claim was found invalid because of indefiniteness:

"25. A filament for electric incandescent lamps or other devices, composed substantially of tungsten and made up mainly of a number of comparatively large grains of such size and contour as to prevent substantial sagging and offsetting during a normal or commercially useful life for such a lamp or other device."

The court with respect to said claim said:

"The claim uses indeterminate adjectives which describe the function of the grains to the exclusion of any structural definition, and thus falls within the condemnation of the doctrine that a patentee may not broaden his product claims by describing the product in terms of function. Claim 25 vividly illustrates the vice of a description in terms of function. 'As a description of the invention, it is insufficient, and, if allowed, would extend the monopoly beyond the invention.' [Holland Furniture Co. v. Perkins Glue Co., 277 U. S. 245, at page 258, 48 S.Ct. 474, at page 479, 72 L.Ed. 868.] The Circuit Court of Appeals for the Ninth Circuit relied on the fact that the description in the claims is not 'wholly' functional. Anraku

v. General Electric Co., [9 Cir.], 80 F.2d 958, 963. But the vice of a functional claim exists not only when a claim is 'wholly' functional, if that is ever true, but also when the inventor is painstaking when he recites what has already been seen, and then uses conveniently functional language at the exact point of novelty."

In the case at bar a like observation is applicable. Here the applicants are definite and exact in stating steps in the claims which are old, but use conveniently functional language at the exact point of novelty. Appellants in their brief contend that "novelty of the claims does not solely reside in the high temperature but in the combined steps of coating and curing * * *."

The answer to this contention is that if it be conceded that the temperatures actually employed by appellants are not novel there is clearly no invention involved, for their specification clearly recites that their invention depends upon the temperature applied and the duration of its application in curing the coating upon the fabric.

In the very recent case of United Carbon Co. v. Binney & Smith Co., 317 U.S. 228, 63 S.Ct. 165, 167, 87 L.Ed. ——, decided by the Supreme Court on December 7, 1942, the following claim was held invalid as being indefinite:

"1. Sustantially (sic) pure carbon black in the form of commercially uniform, *comparatively small,* rounded, smooth aggregates having a spongy or porous interior." (Italics ours)

In this court in the case of In re Duggan et al., 124 F.2d 215, 216, 29 C.C.P.A., Patents, 765, we had before us certain patent claims of which the following was typical: "1. A method of pre-shrinking and finishing cellulosic textile fabric, consisting in padding the same with copper sulphate, subjecting the padded cloth to a bath containing caustic soda and ammonia, removing excess alkali, setting the fibre by means of acid, and removing the excess acid, *the strength and temperature of said baths and the time of treatment being so adjusted that substantial solubilizing of the fiber is avoided.*" (Italics ours.)"

We there held that the claims were indefinite and not allowable.

In our opinion we stated: "We agree with the Board of Appeals that the said functional statement attempts to cover appellants' real invention by stating results rather than conditions and leaves it open to subsequent workers in the art to experiment on the strength and temperatures of the baths and the time of treatment so as to accomplish the desirable results although they say such results flow from certain stated critical strengths and temperatures of the baths and the time of treatment in the process. Appellants have obtained the allowance of claims specifically defining their invention. They now seek to obtain claims which do not mark the limits of the invention and which, in our opinion, do not comply with the statutory requirements relating to such subject matter."

In the case of In re Newton et al., 110 F.2d 110, 27 C.C.P.A., Patents 914, one of the involved claims reads as follows: "9. The method of treating supercooled shortening which comprises subjecting the supercooled fluid shortening to attrition by passing the supercooled fluid through a relatively long unrefrigerated pipe and permitting the shortening to crystalize while passing through the pipe."

This, with other like claims, had been rejected by the Patent Office tribunals as being indefinite.

We affirmed this holding and in our opinion stated: "We are in agreement with the conclusion reached by the Patent Office tribunals that claims 8, 9 and 10 were properly rejected as being indefinite. It is our view that appellants seek to claim by the indefinite phrase 'a relatively long unrefrigerated pipe' a pipe which might or might not respond to the length and character of pipe, the use of which appellants teach in their specification." In support of the above holding we cited the case of General Electric Co. v. Wabash Appliance Corp. et al., supra.

We deem it unnecessary further to discuss these method claims.

Upon the principle of the later decisions of the Supreme Court hereinbefore cited, and of this court, we are convinced that the Patent Office tribunals did not err in rejecting these claims upon the ground of indefiniteness.

In view of this conclusion it is unnecessary for us to consider the ground of their rejection upon the prior art.

The motion of appellants to dismiss their appeal as to claims 18 and 23 is granted.

The decision of the Board of Appeals with respect to claims 1, 2, 3, 5, 6, 8 and 9 is reversed and its decision with respect to claims 13, 15, 16 and 19 is affirmed.